UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                          CRIMINAL ACTION

VERSUS                                                         NO.  25-164

DESHAWN JONES                                          SECTION: "E" (2)

## ORDER AND REASONS

Before the Court is Defendant's Objection[1] to the Final Presentence Investigation Report (the "PSR").[2] The Probation Officer filed a Supplemental Addendum addressing the Objection.[3] The Government filed a Response.[4] After the Court ordered supplemental briefing, the Defendant filed a Reply, and the Government filed a Sur-reply.[5]

## BACKGROUND

On April 21, 2026, Defendant Deshawn Jones pleaded guilty to conspiracy to distribute and possess with intent to distribute fentanyl and cocaine base, possession with intent to distribute fentanyl and cocaine base, and being a felon in possession of a firearm.[6] Applying United States Sentencing Guideline (the "Guideline") 2K2.1(a)(1), the Probation Officer found Defendant has a base offense level of 26, because the Defendant's instant offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine, and the Defendant committed the offense subsequent to sustaining at least two felony convictions of a "controlled substance offense."[7] Under Guideline 4B1.1(a), the Probation Officer also applied a "career offender" enhancement to the

---

[1] R. Doc. 47.
[2] R. Doc. 45.
[3] R. Doc. 50.
[4] R. Doc. 49.
[5] R. Docs. 48, 53, 54, 57.
[6] *See* R. Doc. 38.
[7] R. Doc. 45 at p. 8 ¶ 31.

1

Defendant's total offense level for the same reasons.[8] The Probation officer based her determination that Defendant had predicate "controlled substance offenses" on Defendant's December 13, 2010 and September 15, 2015 state court convictions for possession with intent to distribute cocaine, in violation of Louisiana Revised Statutes 40:967.[9] As a result of these convictions, the Probation Officer calculated the defendant's total offense level to be 34, his criminal history category as VI, and his advisory guidelines range as 262-327 months.[10] Without the career offender enhancement of Guideline 4B1.1(a), the Defendant's base offense level would be 20, his total offense level would be 27, his criminal history category would be V, and his advisory guidelines range would be 120-150 months.[11]

At the time of the commission of the two state offenses, both the Louisiana[12] and federal[13] definitions of "cocaine" included the cocaine-derivative substance Ioflupane.[14] On September 11, 2015, the U.S. Attorney General modified the regulatory drug schedules to specifically exclude Ioflupane from the federal list of cocaine-related substances criminalized by the Controlled Substance Act (the "CSA").[15] In 2016, the Louisiana

---

[8] *Id.* at pp. 8-9 ¶ 37.

[9] *See* R. Doc. 50.

[10] *See* R. Doc. 45 at pp. 8-9 ¶¶ 31-39 and p. 17 ¶¶ 52-53; R. Doc. 46.

[11] *See* R. Doc. 56 at p. 2.

[12] La. R.S. 40:964, Schedule II(A)(4) (effective Aug. 15, 2009 to Aug. 14 2010) and *id.* (effective Aug. 1, 2014 to June 22, 2015) ("Coca leaves, cocaine, ecgonine and any salt, isomer, salt of an isomer, compound, derivative, or preparation of coca leaves, cocaine or ecgonine and any salt, isomer, salt of an isomer, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine."). The definition of cocaine would remain unaltered until the 2016 amendment. *See id.* (effective June 23, 2015 to June 30, 2015); *id.* (effective July 1, 2015 to July 31, 2016); and *id.* (effective Aug. 1, 2016 to July 31, 2017).

[13] 21 C.F.R. § 1308.12(b)(4) (effective Aug. 30, 2009 to June 28, 2010) and *id.* (effective Jan. 23, 2015 to Sept. 10, 2015) ("Coca leaves (9040) and any salt, compound, derivative or preparation of coca leaves (including cocaine (9041) and ecgonine (9180) and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine.").

[14] The Defendant pleaded guilty to the second state offense four days after the change in the federal schedules.

[15] 80 Fed. Reg. 54715-01.

legislature amended the statutory definition of "cocaine" to specifically exclude "Ioflupane, with and without radioisotopes."[16] Presently, both the Louisiana and the CSA definitions of "cocaine" exclude Ioflupane.[17] Thus, although there is a match between the current federal and state law schedules for cocaine, there is a facial mismatch between the state law schedule at the time of the Defendant's state court convictions and the present federal schedule for the instant offense.

Defendant objects to the PSR, arguing his 2010 and 2015 state law convictions no longer qualify as "controlled substance offense[s]" within the meaning of Guidelines 2K2.1(a)(1) and 4B1.1(a) because "Louisiana's definition of cocaine at the time of the prior convictions is facially overbroad" when compared to the present-day federal CSA.[18] Accordingly, Defendant contends he should receive a base offense level of 20 under Guideline 2K2.1(a)(4) and no career offender enhancement.[19]

In its Opposition, the Government argues Supreme Court case law interpreting the Armed Career Criminal Act (the "ACCA") indicates that a predicate offense qualifies if the state and federal schedules matched each other at the time the prior state offense was committed.[20] Since the Defendant's prior offenses were committed before the federal schedule excluded Ioflupane, under this Government theory there would be no mismatch between the schedules.[21] In his Reply, the Defendant points out that this rule applies only to ACCA cases, not to interpretations of the Guidelines.[22] In its Sur-reply, the Government

---

[16] 2016 La. Sess. Law Serv. Act 62 (H.B. 688) (WEST).

[17] 17 La. R.S. 40:964, Schedule II(A)(4) (effective Aug. 1, 2025) ("Coca leaves, and any salt, compound, derivative, or preparation of coca leaves (including cocaine ecgonine and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, *except that the substances shall not include*: . . . Ioflupane, with and without radioisotopes." (emphasis added)).

[18] R. Doc. 47 at p. 1.

[19] *Id.* at p. 5.

[20] R. Doc. 49. *See Brown v. United States*, 144 S. Ct. 1195 (2024).

[21] *Id.* at pp. 2-4.

[22] R. Doc. 53 at p. 2.

concedes the Defendant is correct that "courts use the definitions in the [CSA] in use at the time of sentencing for the present offense to determine whether a defendant qualifies as a career offender" under the Guidelines and that, applying this test, the state statute is facially broader than the Guidelines' definition of a controlled substance offense.[23] The Government now argues, instead, that the Defendant has failed to meet the Fifth Circuit's requirement that he establish a "realistic probability, not a theoretical possibility that the State would apply its statute to conduct that falls outside the generic definition of the crime."[24]

## LAW AND ANALYSIS

The definition of "controlled substance offense" in Guideline 2K2.1(a)(1) cross-references to the definition under Guideline 4B1.1(a).[25] As a result, the analysis is identical under both Guidelines. A defendant qualifies for the career-offender enhancement under Guideline 4B1.1(a) "if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." The Guideline defines a controlled substance offense as a "federal or state" offense punishable by a term of imprisonment exceeding one year that "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance," or the "possession of a controlled substance" with intent to commit one of these acts.[26]

---

[23] R. Doc. 57 at p. 1.
[24] *Id.* (quoting *United States v. Edmond*, 24-30255, 2025 WL 2017287, at *2 (5th Cir. July 18, 2025)).
[25] *See* U.S.S.G. § 2K2.1, comment. (n.1).
[26] U.S.S.G. § 4B1.2.

Contrary to the Government's initial argument, only those drugs listed on federal drug schedules at the time of defendant's *present* federal sentencing are "controlled substances" for the purposes of the career offender enhancement.[27] The issue before the Court is whether Defendant's 2010 and 2015 state convictions for possession with the intent to distribute cocaine qualify at this time as controlled substance offenses under the Guidelines. Put another way, the issue before the Court is whether the facial mismatch between the pre-2016 state schedules and the present day federal schedules for cocaine disqualifies the Defendant's prior state law convictions from being "controlled substance offenses" for purposes of the Guidelines career offender enhancement.

Courts use a "categorical approach" to determine whether a defendant's prior drug conviction qualifies as a "controlled substance offense" within the current Guidelines.[28] Under this approach, a "prior conviction cannot serve as a predicate offense under the Career Offender Guideline Provision" if the "crime of conviction criminalizes a 'greater swath of conduct' than the elements of the relevant Guidelines offense."[29] To determine whether the crime of conviction criminalizes a greater swath of conduct, courts "look not to the facts of the particular prior case," but instead to whether the "statute defining the crime of conviction categorically fits within" the Guidelines definition.[30]

In the Fifth Circuit—and only in the Fifth Circuit[31]—courts applying this categorical approach are further required to consider whether there is a realistic probability that a

---

[27] *United States v. Minor*, 121 F.4th 1085, 1093 (5th Cir. 2024) (noting Congress has given its "express directive to apply the Guidelines in effect at the time of sentencing.").

[28] *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013).

[29] *United States v. Hinkle*, 832 F.3d 569, 576-77 (5th Cir. 2016) (quoting *Mathis v. United States*, 579 U.S. 500, 509 (2016)).

[30] *Moncrieffe*, 569 U.S. at 190; see also *Hinkle*, 832 F.3d at 572 (instructing courts to analyze the "elements of the statute" involved in defendant's prior conviction and not "the actual conduct of the defendant committing the offense").

[31] *See, e.g., Swaby v. Yates*, 847 F.3d 62, 66 (1st Cir. 2017); *Matthews v. Barr*, 927 F.3d 606, 620 (2d Cir. 2019); *Singh v. Att'y Gen.*, 839 F.3d 273, 286 (3d Cir. 2016); *Gordon v. Barr*, 965 F.3d 252, 260 (4th Cir. 2020); *Mendieta-Robles v. Gonzales*, 226 F. App'x 564, 572 (6th Cir. 2007); *Aguirre-Zuniga v. Garland*, 37 F.4th 446, 450 (7th Cir. 2022); *United States v. Daye*, 90 F.4th 941, 946 (8th Cir. 2024); *United States*

state applied its statute to criminalize conduct outside the definition of the federal predicate offense, even if the state criminal statute is "plainly broader than its federal counterpart."[32] To show a "realistic probability," a defendant "must at least point to his own case or other cases in which the state court in fact did apply the statute in the special (nongeneric) manner for which he argues."[33]

The Defendant has not produced any case in which Louisiana prosecuted individuals for possession of Ioflupane.[34] As such, the Defendant has not met his burden under the realistic probability test. Instead, Defendant argues the realistic probability test is no longer mandatory under intervening Supreme Court precedent, and as a result the facial mismatch between the pre-2016 state schedule and the present federal schedule is sufficient to disqualify his state court convictions as potential predicate offenses.[35]

The Court finds the "realistic probability" test still applies. In *Gonzales v. Duenas-Alvarez*, the Supreme Court first articulated the realistic probability test when it applied the categorical approach to determine whether a defendant's conviction under California state law constituted a theft offense for the purposes of a federal immigration statute.[36] Although the elements of the California and federal offenses were the same, the defendant argued that California applied its statute to criminalize aiding and abetting conduct that

---

[32] *United States v. Verdin*, No. CR 22-29, 2025 WL 1380697 at *3 (E.D. La. May 13, 2025) (quoting *United States v. Castillo-Rivera*, 853 F.3d 218,223 (5th Cir. 2017) (en banc)); *see also Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007).

[33] *See Verdin*, 2025 WL 1380697 at *2 (quoting *Gonzalez*, 549 U.S. at 193).

[34] *See* R. Doc. 47. *See also  Alexis v. Barr* 960 F.3d 722, 727-729 (performing realistic probability analysis of Texas state cocaine prosecution).

[35] R. Doc. 47 at pp. 4-5. The Defendant acknowledges that the Fifth Circuit has already rejected this argument, "although it did so in an unpublished, and therefore non-binding opinion." *Id*. at p. 5. *See United States v. Augillard*, No. 25-30192, 2026 WL 1135452 at *3-4 (5thCir. Apr. 27, 2026). The Court notes that, while *Augillard* is not binding, it remains persuasive authority. Further, the Court notes, for reasons discussed *infra*, that *Augillard* is consistent with binding Fifth Circuit guidance on this issue.

[36] 549 U.S. 183, 185 (2007).

fell outside the federal definition.[37] The Supreme Court rejected defendant's argument and held that courts cannot "find that a state statute" criminalizes conduct outside the "generic definition of a listed crime in a federal statute" based only on "the application of legal imagination to a state statute's language."[38] Instead, a defendant must show "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime."[39]

Following *Duenas-Alvarez*, the Fifth Circuit has consistently held that courts must apply the "realistic probability" test when determining whether a state criminal statute qualifies as a predicate offense under the categorical approach.[40] Therefore, when employing the categorical approach, Fifth Circuit courts examine whether state courts "have actually applied the statute to conduct beyond the federal statute,"[41] and defendants must "provide actual cases where state courts have applied the statute in that way."[42]

Despite the Defendant's arguments to the contrary, the Supreme Court's holding in *United States v. Taylor* does not nullify this Fifth Circuit requirement.[43] The Supreme Court examined whether an "attempted Hobbs Act robbery" qualified as a predicate "crime of violence" under the federal ACCA.[44] In that case, the Supreme Court rejected the idea that a defendant must make a *Duenas-Alvarez* "realistic probability" showing to establish a categorical mismatch when the current offense and the alleged predicate offense are both federal crimes.[45] The Court reasoned that federalism concerns were

---

[37] *Id.* at 190.
[38] *Id.* at 193.
[39] *Id.*
[40] *See United States v. Castillo-Rivera*, 853 F.3d 218 (5th Cir. 2017) (en banc) ("There is no exception to the actual case requirement articulated in *Duenas-Alvarez* where a court concludes a state statute is broader on its face.").
[41] *Alejos-Perez v. Garland*, 93 F.4th 800, 805 (5th Cir. 2024).
[42] *Vetcher v. Barr*, 953 F.3d 361, 368 (5th Cir. 2020) (citing *Castillo-Rivera*, 853 F.3d at 223).
[43] *See United States v. Taylor*, 596 U.S. 845 (2022).
[44] *Id.* at 857-58.
[45] *Id.* at 858-59.

central to the *Duenas-Alvarez* analysis, as that case "required a federal court to make a judgment about the meaning of a state statute."[46] When no such federalism issue is "in play," the Court reasoned, there is no need to impose a *Duenas-Alvarez* realistic probability requirement.[47] Prior to *Taylor*, the Fifth Circuit held in *United States v. Castillo-Rivera* that when "a court concludes a state statute is broader on its face" there is "no exception to the actual case requirement articulated in *Duenas-Alvarez*."[48]

The Fifth Circuit has been clear that "nothing in *Taylor* affects how to compare a state statute of conviction with a federal enhancement"[49] and, accordingly, "the Fifth Circuit has not wavered in its application of the realistic probability test in the context of state convictions[.]"[50] Unlike the federal-to-federal comparison at issue in *Taylor*, in cases which involve "a state statute and a federal statute . . . federalism concern[s]" remain "in play."[51] For this reason the Fifth Circuit, "continue[s] to apply the realistic probability test to state court convictions,"[52] and, consequently, this Court is bound to do so.[53]

---

[46] *Id.*

[47] *Id.*

[48] *United States v. Castillo-Rivera*, 853 F.3d 218 (5th Cir. 2017) (en banc).

[49] *United States v. Kerstetter*, 82 F.4th 437, 441 (5th Cir. 2023), *vacated on other grounds*, 145 S. Ct. 121 (2024).

[50] *United States v. Verdin*, No. CR 22-29, 2025 WL 1380697 at *3 (E.D. La. May 13, 2025) (emphasis omitted).

[51] *United States v. Kerstetter*, No. 22-10253, 2025 WL 1079071 (5th Cir. Apr. 10, 2025) (quoting *Taylor*, 596 U.S. at 859).

[52] *United States v. Minor*, 121 F.4th 1085, 1093 n.9 (2024); *See United States v. Augillard*, No. 25-30192, 2026 WL 1135452 at *2-4 (5th Cir. Apr. 27, 2026) (discussing Fifth Circuit application of the reasonable probability test after *Taylor*).

[53] The Court acknowledges that another section of the Eastern District of Louisiana has articulated persuasive reasons why the realistic probability test should not apply in similar circumstances. *See United States v. Keelen*, No. 24-38, 2025 WL 3265059, at *4-7 (E.D. La. Jan. 29, 2025). The court in *Keelen* noted that the Fifth Circuit's current application of the "realistic probability" test does not square with the *Taylor* Court's directive to apply the test only when the elements of a state statute and federal definition facially match. *Id.* at *5. Further, the Court found that the application of the realistic probability test to facially overbroad statutes conflicts with the categorical approach, which directs courts to focus on the language of the statutory offense, not the facts underlying the case. *Id.* at *5-6 (citing *Gonzalez v. Wilkinson*, 990 F.3d 654, 660-61 (8th Cir. 2021)). But *Keelen* does not account for the federalism concerns that in part underpinned *Duenas-Alvarez*. Moreover, this Court is bound by Fifth Circuit precedent and must apply the "realistic probability" test here.

Since the Defendant has not produced a case in which Louisiana prosecuted individuals for possession of Ioflupane under LA R.S. 40:967, he fails to establish a realistic probability that his 2010 and 2015 convictions under that state statute do not qualify as predicate controlled substance offenses for purposes of Guidelines 2K2.1(a)(1) and 4B1.1(a). As a result, the Defendant's argument that the Probation Officer improperly applied the sentencing enhancements fails.

<strong><u>CONCLUSION</u></strong>

For the foregoing reasons,

**IT IS ORDERED** that the Defendant's Objection is **OVERRULED**.

**New Orleans, Louisiana, this 21st day of July, 2026.**

_____

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**
